IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA**

v.

**FRANCISCO RODRIGUEZ-SOLER,**
   Defendant.

Criminal No. 10-164-4 (MAJ/BJM)

## REPORT AND RECOMMENDATION

Defendant Francisco Rodriguez-Soler ("Rodriguez-Soler") was convicted of one count of conspiracy to possess with intent to distribute narcotics in violation of 21 U.S.C. § 841(a)(1) and 860, one count of conspiracy to possess firearms during and in relation to drug trafficking crimes in violation of 18 U.S.C. § 924(o), and one count of conspiracy to possess firearms during and in relation to drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1)(A)(i). Docket ("Dkt.") 956. On March 26, 2013, this court sentenced him to 248 months of imprisonment. *Id.* That sentence was subsequently amended to 211 months pursuant to United States Sentencing Guideline Amendment 782. Dkt. 1104. Due to the COVID-19 pandemic and other allegedly extenuating circumstances, he seeks to have this court reduce his sentence to time served. Dkt. 1292. The government opposed, Dkt. 1294, and Rodriguez-Soler replied. Dkt. 1299. Assuming his COVID-19 argument is unavailing, Rodriguez-Soler seeks a one-year reduction of his sentence because he complied with the court's previous order to complete a 500-hour drug treatment program. Dkt. 1323.

This matter was referred to me for a report and recommendation. Dkt. 1379. For the following reasons, the court should **DENY** Rodriguez-Soler's motions for compassionate release.

## BACKGROUND

Rodriguez-Soler is a 41-year-old male born on April 7, 1984. Dkt. 862 at 16. He has no known juvenile adjudications. *Id*. at 15. In 2004, when Rodriguez-Soler was 19, he was charged with violating Puerto Rico Law 8, but that charge was subsequently dismissed. *Id.* In 2005, he was charged with violating Puerto Rico's Weapons Law, but was later acquitted. *Id.* In 2006, Rodriguez-Soler was charged twice with violating Puerto Rico's Controlled Substances Law. *Id.* However, one charge was dismissed and he was acquitted of the other charge. *Id.* Lastly, in 2007, Rodriguez-Soler was charged with violating Puerto Rico's Weapons Law, but no probable cause was found. *Id.*

In the present case, Rodriguez-Soler was sentenced to 248 months on March 26, 2013 after he was found guilty of a conspiracy to possess with intent to distribute narcotics and two counts of possessing a firearm in connection with that offense. Dkt. 956. On December 16, 2015, this sentence was amended to 211 months pursuant to United States Sentencing Guideline Amendment 782. Dkt. 1104. Miranda's release date is now scheduled for October 25, 2025. Dkt. 1294 at 1; Dkt. 1299 at 7.

In his initial filing for compassionate release, Rodriguez-Soler claimed he previously received treatment after being exposed to tuberculosis. Dkt. 1292 at 8. He also noted he had completed various courses during his confinement, including a drug abuse program. *Id.* at 8–9. After the government opposed that motion, Rodriguez-Soler stated in his reply that his wife and three children had suffered during his incarceration due to Hurricane Maria, a series of earthquakes that struck Puerto Rico in 2020, and the outbreak of COVID-19. Dkt. 1299 at 5–6. In his second motion for compassionate release, Rodriguez-Soler noted he had completed a 500-hour Residential Drug Abuse Treatment program. Dkt. 1323 at 2. He further submitted a certificate of recognition

that he had completed a self-help book study in October 2019, documentation showing his lack of disciplinary history while incarcerated, and records showing he had completed dozens of educational courses during his imprisonment. Dkt. 1292-2. Though those records show Rodriguez-Soler enrolled in and completed various drug education courses, *id.* at 5, it is unclear which, if any, of these classes are the 500-hour program referenced in his second motion.

When he filed his original motion, Rodriguez-Soler stated he was incarcerated at Federal Correctional Institution McDowell, located in McDowell County West Virginia ("FCI McDowell"). Dkt. 1292 at 9. At that time, he alleged the recommended COVID-19 social distancing measures were nearly impossible to implement because inmates shared dining, bathing, and sleeping areas. *Id.* at 8. Further, he stated COVID-19 testing was largely unavailable in county jails. *Id.* However, it is unclear whether this was the case at FCI McDowell, a federal prison, where Rodriguez-Soler was and presumably remains. Rodriguez-Soler noted that, as of May 29, 2020, 3,319 federal inmates and 250 Bureau of Prisons ("BOP") staff had tested positive for COVID-19. *Id.* In his August 2020 reply, Rodriguez-Soler asserted those numbers had increased to 4,995 federal inmates and 516 BOP staff. Dkt. 1299 at 2. He further noted 89 inmates and one BOP staff member had died from the illness. *Id.* (citing https://www.bop.gov/coronavirus). And he observed that one BOP staff member at FCI McDowell had contracted the virus. *Id.*

As of April 2024, Rodriguez-Soler's cited link leads to an error page. However, COVID-19 data on the BOP's website currently shows FCI McDowell has reported 619 COVID-19 cases since the onset of the pandemic, but currently has zero cases. *Inmate COVID-19 Data*, FEDERAL BUREAU OF PRISONS, (April 2, 2024), https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp. It further shows FCI McDowell has reported zero COVID-19-related deaths since the pandemic began. *Id.*

## STANDARD OF REVIEW

A court may grant so-called "compassionate release" to a defendant under 18 U.S.C. § 3582(c)(1)(A). That statute provides, in relevant part, that:

> the court, upon motion of the Director of the Bureau of Prisons or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)     extraordinary and compelling reasons warrant such a reduction
> . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A); *see also* U.S.S.G. § 1B1.13 (sentencing guidelines policy statement on compassionate release). Under this statute, a district court may properly consider a motion for compassionate release under three circumstances: (1) the motion is filed by the Director of the BOP; (2) the motion is filed by defendant after he exhausts all his administrative rights to appeal BOP's refusal to bring a motion on his behalf; or (3) the motion is filed by defendant 30 days after defendant requested BOP to petition for compassionate release on his behalf. 18 U.S.C. § 3582(c)(1)(A).

Once a motion for compassionate release is properly before the court, the court must then determine if the defendant is eligible for release. To be eligible, a defendant must show that "extraordinary and compelling reasons warrant" a reduction in his sentence, the applicable 18 U.S.C. § 3553(a) factors warrant a reduction, and a reduction is "consistent" with the Sentencing Commission's applicable policy statements. *Id*. I note a defendant's dangerousness is a paramount concern as a court weighs the decision to grant a defendant early release. *United States v. Gil*, 484

F. Supp. 3d 19, 22 (D.N.H., 2020); *see also United States v. Bradshaw*, 2019 WL 7605447, at *3 (M.D.N.C. Sept. 12, 2019) (explaining overlap between dangerousness requirement in compassionate release policy statement and § 3553(a) requirement that court consider the need to protect the public).

The § 3553(a) factors include the nature and circumstances of the defendant's offense and the defendant's personal history and characteristics. 18 U.S.C. § 3553(a)(1). Section 3553(a) also requires that the court ensure the sentence imposed reflects the seriousness of the offense; promotes respect for the law; provides just punishment; affords adequate deterrence; protects the public from further crimes of the defendant; and provides the defendant with needed training, medical care, and other treatment in the most effective way. 18 U.S.C. § 3553(a)(2). Section 3553(a) further requires the court consider the kinds of sentences available, the Sentencing Guidelines, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. 18 U.S.C. § 3553(a)(3)-(7).

"The defendant bears the burden of establishing that extraordinary and compelling reasons exist, that he is no longer a danger to the community, and that the section 3553(a) factors favor release." *United States v. Figueroa-Gibson*, 2024 WL 376432, at *2 (D.P.R. Jan. 31, 2024) (citing *United States v. Galiany-Cruz*, 2023 WL 6458535, at *1 (1st Cir. 2023); *United States v. Miranda-Rojas*, 2023 WL 7181650, at *1 (1st Cir. 2023)). And the court has "broad discretion in deciding whether to grant or deny a motion for sentence reduction." *United States v. Paul Gileno*, 448 F. Supp. 3d 183, 186 (D. Conn. 2020) (internal quotation marks omitted).

Finally, I note a court may also reduce an otherwise final prison sentence "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582(c)(1)(B).

# DISCUSSION

Rodriguez-Soler originally moved for a sentence reduction under 18 U.S.C. § 3582(c)(1)(B) based on changes the First Step Act made to 18 U.S.C. § 3582(c)(1)(A) and the risks posed by COVID-19. Dkt. 1292. In his second motion, Rodriguez-Soler argued he was entitled to a one-year reduction of his sentence because he completed a drug treatment program. Dkt. 1323. This court has jurisdiction under 18 U.S.C. § 3582(c)(1)(A). In response to Rodriguez-Soler's first motion, the government argued he failed to exhaust his administrative remedies as required by § 3582(c)(1)(A), the First Step Act did not apply to him, he did not demonstrate extraordinary or compelling circumstances, and the factors outlined in 18 U.S.C. § 3553(a) weighed against release. Dkt. 1294. The government did not respond to Rodriguez-Soler's subsequent motion. I turn to the parties' arguments.

## I. Administrative Remedies

### A. First Motion – COVID-19

Under § 3582(c)(1)(A), a defendant must fully exhaust all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or wait 30 days after the warden at the defendant's facility receives his request for compassionate release, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). In his first motion, Rodriguez-Soler argues he exhausted his administrative remedies because he submitted a "cop-out" to FCI McDowell's warden and the BOP did not file a motion for compassionate release on his behalf. Dkt. 1292 at 8. The government responds by noting that § 3582(c)(1)(A) provides the BOP 30 days to bring such a motion and that Rodriguez-Soler filed his administrative request for release due to COVID-19 just 11 days before submitting his motion to this court. Dkt. 1294 at 2–6. It further argues that COVID-19 did not allow this court to sidestep § 3582(c)(1)(A)'s administrative exhaustion requirement. *Id.* at 4–5.

In response, Rodriguez-Soler contends the warden denied his "cop-out" seeking compassionate release on May 12, 2020. Dkt. 1299 at 3. And he originally moved for compassionate release on May 29, 2020. Dkt. 1292. Though Rodriguez-Soler directs the court to an attached copy of the warden's denial, Dkt. 1299 at 3, no such copy is included with his motion or elsewhere in his filings. Rodriguez-Soler's failure to substantiate his claim suffices to dismiss his motion without prejudice. *United States v. Pabon-Mandrell*, 2023 WL 8866598, at *5 (D.P.R. Dec. 22, 2023) (explaining that, had government raised the issue, the lack of evidence that Defendant exhausted BOP's administrative appeals process "would have been sufficient grounds to deny without prejudice the compassionate release petition"). Moreover, even assuming Rodriguez-Soler had exhausted all administrative remedies, his request for release would still fail on the merits for the reasons discussed below.

**B. Second Motion – Completion of Drug Treatment Program**

Rodriguez-Soler did not address the administrative exhaustion requirement in his second motion. However, the requirement "is not a jurisdictional limitation: as several circuits previously have held, it is a non-jurisdictional claim-processing rule." *United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022). "As such, the government can waive it 'either expressly or by failing to raise it as a defense.'" *United States v. Escobar-De Jesus*, 2024 WL 1230246, at *3 n.3 (D.P.R. Mar. 22, 2024) (citation omitted). Because the government did not respond to Rodriguez-Soler's second motion, it waived this argument with respect to that motion. *See id.* (finding government waived exhaustion defense by failing to respond to Defendant's motion).

**II. The Merits**

Though only Rodriguez-Soler's second motion survives the administrative exhaustion analysis, in the interest of efficiency I address the merits of both motions. Again, I note a court

may reduce a term of imprisonment under the compassionate release provision if it: (1) finds that extraordinary and compelling reasons warrant the reduction; (2) determines the defendant will not be a danger to the safety of any other person or the community; and (3) the sentencing factors outlined in 18 U.S.C. § 3553(a) weigh in favor of reduction. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. I address each issue in turn.

### A. Extraordinary and Compelling Circumstances

In his first motion, Rodriguez-Soler notes the First Step Act allows defendants to petition courts for compassionate release and argues extraordinary and compelling circumstances warrant his release because his previous tuberculosis exposure renders him exceptionally vulnerable to COVID-19. Dkt. 1292. The government disagrees on both counts. Dkt. 1294. In his reply, Rodriguez-Soler contends that, had the First Step Act been in effect at the time of his sentencing, the court could have imposed a sentence for his firearm offense concurrent with, not consecutive to, his sentence for his drug trafficking offense. Dkt. 1299 at 4–5. He also argues his family circumstances and rehabilitation support compassionate release. *Id.* at 5–7. In his second motion, Rodriguez-Soler argues extraordinary and compelling circumstances exist because he completed a court-ordered, 500-hour drug rehabilitation program and this court told him he could earn up to one year of credit toward completion of his sentence by doing so. Dkt. 1323 at 3–5. As discussed, the government did not respond to Rodriguez-Soler's second motion.

The Sentencing Commission has identified the following six circumstances that individually or in combination may provide extraordinary and compelling reasons for reducing a sentence: (1) certain medical circumstances such as a terminal illness or inability to receive medical care while incarcerated; (2) the defendant's age; (3) the defendant's family circumstances; (4) the defendant having been the victim of sexual or physical abuse by or at the direction of a

correctional officer; (5) a catch-all provision encompassing any other reason or combination of reasons similar in gravity to those described in (1) through (4); and (6) the defendant received an unusually long sentence. U.S.S.G. § 1B1.13(b). I note that Rodriguez-Soler argues courts may consider circumstances outside the four criteria that existed when he filed his motion in 2020. Dkt. 1292 at 4–6 (noting Sentencing Commission had not amended the criteria since the First Step Act's enactment). However, the Sentencing Commission subsequently amended U.S.S.G. § 1B1.13(b) in 2023 and the catch-all provision supports Rodriguez-Soler's contention that courts may look beyond the enumerated criteria. I turn to Rodriguez-Soler's arguments.

1. **COVID-19**

Because Rodriguez-Soler's first motion focuses on the risks associated with COVID-19 given his previous exposure to tuberculosis, Dkt. 1292 at 8–9, I begin the analysis there. In his August 2020 reply, Rodriguez-Soler asserts 4,995 federal inmates and 516 BOP staff had been infected with COVID-19. Dkt. 1299 at 2. He further notes 89 inmates and one BOP staff member had died from the illness. *Id.* (citing https://www.bop.gov/coronavirus). However, "[w]hile COVID-19 is still a threat, the conditions that exist today are nothing like the extreme measures that were necessary at the beginning of the pandemic." *United States v. Rondon*, 2024 WL 964261, at *2 (D.P.R. Mar. 6, 2024) (alterations in original) (quoting *United States v. Fabian*, 2023 WL 8449453, at *2 (D.R.I. Dec. 6, 2023)); *see also United States v. Doe*, 2023 WL 4053022, at *1 (D. Mass. June 16, 2023)("The COVID-19 pandemic was extraordinary. However, it no longer constitutes the emergency that it once did.").

Statistics support this observation. Though Rodriguez-Soler's citation to the BOP's website now leads to an error page, the BOP's online data available as of April 1, 2024 shows FCI McDonnell has no active COVID-19 cases among inmates or staff. *Inmate COVID-19 Data*, Fed.

Bureau of Prisons (last visited April 2, 2024), https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp. Further, unlike at the beginning of the COVID-19 pandemic, safe and effective vaccinations are now widely available. *See Doe*, 2023 WL 4053022, at *1. Though it is unclear whether Rodriguez-Soler has been vaccinated, "[i]f [he] has refused vaccination, he should not benefit from failing to take proper precautions to reduce his risk." *Id.*, at *2. Thus, acknowledging Rodriguez-Soler's alleged previous tuberculosis exposure, the spread of COVID-19 does not constitute an extraordinary and compelling circumstance warranting compassionate release under 18 U.S.C. § 3582(c)(1)(A).

### 2. First Step Act

Rodriguez-Soler's initial motion also seeks compassionate release under 18 U.S.C. § 3582(c)(1)(B) based on the First Step Act. However, it only explains that the Act allows defendants to petition courts, as opposed to the BOP, for compassionate release. Dkt. 1292 at 3–4. Though it mentions Sections 401, 402, and 403 of the Act, *id.* at 2–3, that discussion states these sections are not retroactive and thus do not apply to defendants who, like Rodriguez-Soler, were sentenced prior to the Act's passage in 2018. *Id.*; *see also* First Step Act of 2018, Pub. L. No. 115-391, §§ 401(c), 402(b), 403(b), 132 Stat 5194 (2018). Rodriguez-Soler also mentions that the First Step Act makes retroactive certain provisions of the Fair Sentencing Act of 2010. Dkt. 1292 at 2; *see* First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat 5194 (2018). However, he does not argue that he benefits from this change. And he does not benefit because the Fair Sentencing Act was already in effect when he was sentenced in 2013. Accordingly, Rodriguez-Soler has not met his burden of showing that he is entitled to a sentence reduction under 18 U.S.C. § 3582(c)(1)(B).

### 3. Arguments Raised in Reply

In his reply, Rodriguez-Soler also discusses additional events that he says constitute extraordinary and compelling circumstances. First, he argues, had the First Step Act been in effect at the time of his sentencing, the court may have had discretion to give him a concurrent, instead of consecutive, sentence for his firearm offense. Dkt. 1299 at 4–5. Next, he notes his wife and three children, aged 14, 12, and 10 in 2020, had suffered during Hurricane Maria and a series of earthquakes that struck near their home on Puerto Rico's southern coast in early 2020. *Id.* at 5–6. As a result, Rodriguez-Soler notes his wife lost her job and moved the family to Pennsylvania. *Id.* Though she found work in a factory there, she subsequently lost that job due to the outbreak of COVID-19. *Id.* Rodriguez-Soler contends he has been regularly employed throughout his incarceration and is qualified to work as a health care assistant, which would help him support his family and provide critical services given the COVID-19 pandemic. *Id.* He concludes by stating he has made significant strides toward rehabilitation and behaved well while incarcerated. *Id.* at 6–7.

As an initial matter, "[t]he First Circuit has time and again made clear that a party waives any argument raised for the first time in a reply brief." *Gonzalez Canton v. Mad Ruk Ent., Inc.*, 2023 WL 4546545, at *9 (D.P.R. July 13, 2023) (quoting in parenthetical *North American Specialty Ins. Co. v. Lapalme*, 258 F.3d 35, 45 (1st Cir. 2001) ("There are few principles more securely settled in this court than the principle which holds that, absent exceptional circumstances, an appellant cannot raise an argument for the first time in a reply brief.")). Moreover, even if these arguments were raised in Rodriguez-Soler's original motion, they would fail on the merits.

### i.     *Consecutive Sentence*

Rodriguez-Soler contends the First Step Act may have allowed the sentencing court to impose a concurrent, instead of consecutive, sentence for his conviction under 18 U.S.C. § 924(c). Dkt. 1299 at 4–5. However, caselaw postdating the First Step Act shows that is incorrect. *See Lora v. United States*, 599 U.S. 453, 455 (2023) (noting courts generally have discretion to impose sentences concurrently or consecutively, but that "[a]n exception exists in subsection (c) of [18 U.S.C.] § 924, which provides that 'no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment.'"). Accordingly, this argument does not warrant compassionate release.

### ii.    *Family Circumstances*

As for Rodriguez-Soler's family circumstances, the U.S. Sentencing Guidelines policy statement does not contemplate reducing a defendant's sentence for the reasons he cited. I am sympathetic regarding the hardship that Rodriguez-Soler's incarceration has caused his family. And I have little doubt that Hurricane Maria, Puerto Rico's 2020 earthquakes, and the COVID-19 pandemic all exacerbated that hardship. However, the U.S. Sentencing Guidelines policy statement says family circumstances may warrant a reduction of a defendant's sentence due to the death or incapacitation of a minor child's caregiver, incapacitation of the defendant's spouse or parent where defendant is the only available caregiver, or similar circumstances involving an immediate family member or someone with whom a defendant has a comparable relationship. U.S.S.G. § 1B1.13(b)(3). Here, Rodriguez-Soler notes his wife lost her jobs following natural disasters, not due to her inability to work. There is no evidence or suggestion that Rodriguez-Soler's wife is incapable of caring for herself and the couple's three children. Accordingly, Rodriguez-Soler's admittedly challenging family circumstances do not warrant reducing his sentence.

### *iii.  Rehabilitation*

Finally, though Rodriguez-Soler's rehabilitation is commendable, "the [Sentencing Guidelines] policy statement specifically precludes a finding of extraordinary and compelling reasons on said grounds standing alone." *United States v. Malpica-Garcia*, 2024 WL 1172769, at *4 (D.P.R. Mar. 19, 2024); *see also* U.S.S.G. § 1B1.13(d). Accordingly, Rodriguez-Soler's rehabilitation does not warrant reducing his sentence.

### 4.  Drug Treatment

In his second motion, Rodriguez-Soler argues his completion of a court-ordered, 500-hour drug rehabilitation program warrants a sentence reduction. Dkt. 1323. He contends he complied with this court's previous order to participate in the program, but the BOP refused to grant him the one-year sentence reduction he was supposed to receive upon doing so. Dkt. 1323 at 3–5 (citing Dkt. 984 (Sentencing Transcript) at 11, 20–21). The sentencing transcript states that, among other things, Rodriguez-Soler's positive drug test for oxycodone warranted 500 hours of mandatory drug treatment. Dkt. 984 at 20–21. And it says that "if [Rodriguez-Soler] passes the test, his sentence *may* be reduced up to 12 months." *Id.* at 21:3–4 (emphasis added). Elsewhere, the transcript states the drug treatment program will be provided "with sufficient time so that he *can* earn an up to one-year reduction in his sentence" *Id.* at 11:18–19 (emphasis added). Words like "may" and "can," as opposed to "must" and "will," imply that the BOP *could* reduce Rodriguez-Soler's sentence upon his completion of a drug treatment course, but it was not required to do so. The transcript illustrates this point. *See id.* at 11:12–15 ("[T]his Court proceed[s] to provide an order of a mandatory drug program for this defendant, the appropriate one being the 500 hours of drug treatment which *will* occur at the end of his service.") (alterations and emphasis added). Thus, while Rodriguez-Soler

was required to complete a 500-hour drug treatment course, the BOP was not required to reduce his sentence upon that completion.

I further note that, while Rodriguez-Soler's documentation shows he has enrolled in drug treatment courses, Dkt. 1292-2 at 5, he submitted no evidence that he completed the specific 500-hour course discussed in his motion and the sentencing transcript. The only drug education course he appears to have completed ended in 2013. *Id.* Given the court's previous statement that the 500-hour drug treatment course would be offered near the end of Rodriguez-Soler's prison term, Dkt. 986 at 11:16–21, it is unlikely that Rodriguez-Soler completed the course in 2013. And though Rodriguez-Soler submitted evidence of current drug screenings and education programs, Dkt. 1292-2 at 5, he did not submit documentation showing he completed those programs. Accordingly, even if Rodriguez-Soler's completion of the 500-hour drug treatment program warranted a one-year reduction of his sentence, he has not satisfied his burden of showing that he finished the program. *See Figueroa-Gibson*, 2024 WL 376432, at *2 (defendant's burden to establish extraordinary and compelling circumstances). Rodriguez-Soler is thus ineligible for compassionate release or a one-year reduction of his sentence.

**B. Danger to Community**

Though unnecessary given the above analysis, I next examine whether Rodriguez-Soler would pose a danger to the safety of any other person or to the community if he obtained compassionate release. In conducting that analysis, courts examine a defendant's prior offenses, use of weapons, and other violent conduct. *See, e.g.*, *Pabon-Mandrell*, 2023 WL 8866598, at *6; *Escobar-De Jesus*, 2024 WL 1230246, at *5. The *Escobar-De Jesus* court also examined efforts toward rehabilitation, age and health conditions, a BOP likelihood-of-recidivism analysis, supervised release conditions, and the defendant's support system. *Id.*

Here, Rodriguez-Soler had an arrest record for multiple weapons and controlled substances. Dkt. 862 at 15 ¶ 35. Thus, like the defendant in *Pabon-Mandrell*, "regardless of his criminal history category of I, [Rodriguez-Soler] was not really a first-time offender." 2023 WL 8866598, at *6. He was then convicted in this case of a conspiracy to distribute cocaine and two counts of conspiring to possess firearms in connection with that conspiracy. Dkt. 956 at 1. However, I recognize this conduct occurred nearly 15 years ago. Nevertheless, I note "[f]irearms offenders in general recidivate at a significantly higher rate than non-firearms offenders." *United States v. Whindleton*, 2020 WL 7265844, at *3 (D. Me. Dec. 10, 2020) (citing U.S. SENT'G COMM'N, RECIDIVISM AMONG FEDERAL FIREARMS OFFENDERS 4 (2019) (finding that 68.1% of firearms offenders released in 2005 recidivated versus 46.3% of non-firearms offenders)). Further, Rodriguez-Soler apparently owned a drug point located in a public housing project, Dkt. 862 at 14 ¶ 23, and took control of the drug trafficking conspiracy's narcotics when its leader was imprisoned. *Id.* at 10 ¶ 14. He thus, had a high-level role in this conspiracy.

As for the remaining factors, Rodriguez-Soler's records from 2020 show no history of frequent discipline and no disciplinary incident reports within the previous six months. Dkt. 1292-2 at 3, 5. Further, he has apparently completed dozens of educational courses during his incarceration. Dkt. 1292-2 at 4–5. However, at 41 years old, Dkt. 862 at 16 ¶ 36, he is more likely to recidivate than an older offender. *Escobar-De Jesus*, 2024 WL 1230246, at *5 (D.P.R. Mar. 22, 2024) (noting when assessing 74-year-old's motion for compassionate release that "older offenders are substantially less likely than younger offenders to recidivate following release.") (citing U.S. SENT'G COMM'N, THE EFFECTS OF AGING ON RECIDIVISM AMONG FEDERAL OFFENDERS 9–11 (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf). And, at least as of 2020, Rodriguez-Soler was

incarcerated at a medium-security facility, Dkt. 1292-2 at 3, indicating that he may pose some risk to others. *See United States v. Perkins*, 480 F. Supp. 3d 372, 374 (D.N.H., 2020) (citing incarceration at low security facility in support for finding defendant posed little risk). While Rodriguez-Soler alleged he was previously exposed to tuberculosis, he cited no other health conditions and appears to be otherwise healthy. Dkt. 1292-2 at 5. If released, Rodriguez-Soler would be under supervised release conditions for eight years. And though he offered no evidence of a recidivism analysis, he submitted documentation rating his family and community connections as good. Dkt. 1292-2 at 3.

At best, this muddled picture warrants finding Rodriguez-Soler poses some risk to others. He had multiple contacts with police for violent conduct before his arrest for this offense, which involves a drug trafficking conspiracy and the use of weapons in connection with that conspiracy. However, nearly fifteen years have passed since Rodriguez-Soler's offense and he appears to have behaved well in prison during that time. Nevertheless, he is relatively young, seemingly healthy, and incarcerated at a medium security facility. Thus, his physical condition would pose no obstacle to partaking in criminal conduct. And unlike in *Escobar-De Jesus* where a probation officer determined the defendant had a solid support system and the BOP found a low risk of recidivism, 2024 WL 1230246, at *5, here there is no information regarding the BOP's belief about Rodriguez-Soler's likelihood of recidivism. Accordingly, I find Rodriguez-Soler has not shown that he is unlikely to pose a danger to the safety of any other person or the community if he is released.

C. Section 3553(a) Factors

Finally, I examine the factors outlined in 18 U.S.C. § 3553(a). Rodriguez-Soler offered little to no analysis of these factors. Again, they are (1) the nature and circumstances of the offense along with the defendant's history and characteristics; (2) the need for the sentence imposed to

reflect the seriousness of the offense, adequately deter criminal conduct, protect the public from further crimes, and provide the defendant with educational or vocational training or medical care; (3) the kinds of sentences available; (4) the sentencing guideline range; (5) any policy statement issued by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution for victims of the offense. 18 U.S.C. § 3553(a).

These factors alone are not enough to warrant granting a motion for compassionate release. And even if they were, Rodriguez-Soler does not satisfy them. As discussed above, he had multiple encounters with police for violent conduct before committing this violent offense. Given his total offense level of 34, Dkt. 984 at 19, later amended to 32 under Amendment 782, Dkt. 1104, Rodriguez-Soler is serving a sentence within the relevant guideline range, albeit at the high end. And though he received a longer sentence than the conspiracy's leader, that defendant pled guilty while Rodriguez-Soler went to trial. The seventh factor is irrelevant because no restitution was ordered in the case. Dkt. 862 at 20 ¶ 62; Dkt. 956 at 5. Thus, the Section 3553(a) factors do not weigh in favor of reduction. Accordingly, Rodriguez-Soler has not met his burden of showing that he is entitled to a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

## CONCLUSION

For the foregoing reasons, I recommend that the court **DENY** the defendant's motions for compassionate release.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within two weeks of the date of this order. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 12th day of April 2024.

*s/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge